McBRIDE, Judge.
Plaintiff appeals from a judgment dismissing his suit for damages against defendant, an alleged tort-feasor, for personal injuries. The compensation insurance carrier for plaintiff’s employer, which was liable for and which paid plaintiff workmen’s compensation as a result of his injuries, entered the case as an intervenor claiming the right to recover the amount paid. See LSA-R.S. 23:1101-23:1103. The judgment also dismissed this intervention, but whereas intervenor saw fit not to appeal its demands are not before us.
The transcript herein was filed in November 1950, but the case was not argued until eleven years later. Docket entries show nine continuances, and it seems the then attorneys for plaintiff were content to take only the necessary steps, such as filing motions to place on the preference docket, etc., to forestall the presumption the appeal was abandoned under LSA-C.C. art. 3519, as amended.
The trial in the court below consumed six days and the voluminous record contains more than 600 pages of testimony elicited from 35 witnesses, plus documentary evidence.
The judge below handed down written reasons for judgment and we consider them concise but comprehensive. Therein is found a statement of the case with an analysis of the pertinent evidence, which, to say the least, is most conflicting, inconsistent, and in some details utterly confusing. The judge recorded and set forth his findings of fact so clearly and so well we have resolved to make a part of our opinion that portion of the reasons for judgment here quoted:
“Plaintiff brings this suit for damages against the defendant, T. Smith & Son, Inc., alleging that he was injured on August 12, 1948, on the Florida Street Wharf, located on the Mississippi River, in the City of New Orleans, while engaged as a ‘Puller’ of *440 sugar sacks as a member of a gang engaged in carloading operations for his employer, River Service, Inc.
“He alleges that while so engaged, he was struck by a sugar truck operated by the agents and servants of T. Smith & Son, Inc., Longshoremen, who were engaged in unloading the vessel Captain John. The operation of unloading sugar was described by numerous witnesses to be as follows: That the longshoremen in the employ of T. Smith & Son, Inc., receive the sugar in cargo nets from the vessel, the cargo nets containing the sugar being placed directly on the sugar trucks; that men working in teams of two move the sugar trucks to a scale for weighing, and then propel the trucks to a point near the New Orleans Public Belt Railroad side of the docks where it is stacked by ‘Filers’ in tiers three bags high and five bags long.
“A great deal of testimony was adduced with reference to the custom of stacking sugar. Substantially it is as follows: That the longshoremen first place in piles some considerable number of bags of sugar before the car loaders, who are to work on the New Orleans side of the dock, ever begin to load the cars. There is, however, testimony in the record to the effect that when a boat is late, or the operation breaks down due to rain or other difficulty, the car loaders take the sugar, immediately as it is laid down in stacks of three by the longshoremen.
“The plaintiff in this case contends that he, while working as a ‘Puller,’ was standing there with a companion and had headed up a bag of sugar (which apparently means he stood the bag of sugar on its end) preparatory to placing it on a hand truck of River Service Co., Inc., when a sugar truck operated by the agents and servants of T. Smith & Sons, Inc., approached him from the rear, and the handle or shaft of the truck hit him on the left side of his back and caused him the injuries which he complains of.
“Plaintiff produced several witnesses who attempt to bear him out in his version of the accident. The accident supposedly happened about 11:45 a. m. Plaintiff testifies that at the time of the accident he was knocked to the floor of the wharf; that he remained there for a short period of time, arose, and pulled about thirty or forty sacks of sugar until noon-time when he had his lunch hour; that after lunch he attempted to pull sugar again, found that he couldn’t, attempted to truck sugar and found that he couldn’t. He reported his disability to his foreman, a man named Collins, and the next morning he was sent to a doctor by the compensation insurance carrier. He received treatment under the care of Dr. Geismar, Dr. Battalora, and Dr. Cato, tie was discharged by Dr. Geis-mar on December 1, 1948, after he was paid compensation for some fourteen weeks.
“On March 4, 1949, demand was made by the plaintiff’s attorney on the insurer of River Service Company for further compensation, and at the same time it was indicated from the plaintiff’s attorney’s letters in the record, that the plaintiff might have a claim against the defendant, T. Smith & Son, Inc.
“The Charity Hospital record which is in evidence, shows that the defendant had been to the Charity Hospital previous to the accident, and had complained of pains in his back and legs, and as late as November 13, 1945, he complained of pain in his back which seemed to radiate from between the fourth and fifth lumbar vertebrae of the spine.
“The defendant contends that during the customary operation of unloading *441 sugar from a ship to the wharf, especially at the Florida Wharf, that the pile of sugar never diminishes to the extent of one or two or three hags, but that they always maintain a considerable amount of sugar between the gang of longshoremen and the gang of carloaders, and that it is improbable that a sugar truck operated by the longshoremen could come into contact with a car loader at any time during the car loading operation.
“Defendant further claims that the accident, if an accident was sustained by the plaintiff, did not occur, at least in the manner that the plaintiff asserts that it did.
“The only witnesses that the plaintiff produced were his co-workers, who testified that the plaintiff was hit by the handle of the sugar truck. One of his co-workers, Willie Gray, had been subpoenaed by the plaintiff, but not served, and the court caused a subpoena to be issued against Gray and placed Willie Gray on the witness stand. This was done as Willie Gray was supposedly an eye witness to the accident, as he was pulling the No. 2 hand truck of the River Service in the gang that was taking sugar from the pile behind which the plaintiff allegedly was injured.
“Willie Gray stated that he was a man of religion, and that the reason he didn’t desire to take the witness stand in this case was because he didn’t like to take an oath. He had, however, freely taken the oath prior to this statement, and he testified that he was some twenty feet away, bringing his sugar cart to the pile at the time that the plaintiff was allegedly knocked down by the sugar truck of T. Smith & Son, Inc. He testified that the plaintiff did not fall to the wharf floor, but that he, plaintiff, had a sugar hook in each hand, and had hooked a sugar bag with both hooks, and that the hook in plaintiff’s right hand tore out of the burlap bag and that the plaintiff became overbalanced at the moment that a sugar truck of T. Smith & Son, Inc., was making a turn and hit the plaintiff on the left rear side.
“Willie Gray denied that he was the person who had put the plaintiff in contact with the plaintiff’s attorney, which is contrary to the evidence given by the plaintiff himself.
“It is obvious to the court that Willie Gray knew more about this lawsuit than he stated from the stand. The accident report made by the River Service Company to its insurer was made by a Foreman by the name of Harry Leyrer. Nothing in the report indicates that the accident happened in the manner that the plaintiff now alleges. According to Foreman Harry Leyrer, when the colored Foreman Collins reported the accident to him on the evening of August 12, 1948, at about four p. m., nothing was told him to the effect that a sugar truck of T. Smith & Son, Inc., ran into the plaintiff. The report simply states that the plaintiff hurt his back while pulling sugar.
“When on the witness stand in rebuttal, the Foreman, Leyrer, stated that on the evening of the accident he was told by the colored foreman in charge of plaintiff’s gang that plaintiff had been injured trying to get out of the way of a truck of T. Smith & Son, Inc., whereas upon Direct Examination this same witness testified that he had no knowledge whatsoever that a sugar truck of T. Smith & Son, Inc., was supposed to be involved.
“It is inconceivable to this court that if the plaintiff had been injured as he alleges, that he would not have reported the details of the accident to his foreman.

*442 “The negative proof in this case is strong. It is the opinion of this court that the plaintiff was not injured in the manner in which he alleges he was injured in his petition.
“This court believes that if this plaintiff was injured at all, he was injured within the scope of his employment, and not by any act on the part of the defendant T. Smith & Son, Inc., or its servants or agents.”
Counsel for appellant fully realize that their position here advocates an overthrowing of the judgment of the trial court which is grounded solely on factual questions, but they assiduously contend that this is a case where positive evidence, as they say was supplied by the plaintiff witnesses, is opposed by negative evidence as supplied by the defense, and that under the jurisprudence of the state the positive testimony must prevail over the negative evidence.
We agree there is an ancient rule of evidence to the effect that positive testimony on a given point will preponderate over negative testimony on the same point. While the rule has been applied in a variety of cases, it has never controlled a situation similar or analogous to that confronting us. Under the type of defense tendered by defendant we are concerned with the proposition whether plaintiff actually met with such an accident as he declares upon, and It is quite obvious that the only evidence defendant could possibly rely on would be such as to negate the occurrence of the accident. The evidence defendant produced to that end is not negative in the sense contemplated by the rule above alluded to, although some of it consists of negative statements, the whole going to show a negative situation. For instance, the Charity Hospital records were produced for the purpose of demonstrating that plaintiff was afflicted with a back condition before the accident; other evidence shows plaintiff did not report the details of the occurrence or that a third person was involved therein; some witnesses stated that the accident did1 not happen; others testified that the manner in which the sugar was stacked would have inhibited defendant’s truck, which plaintiff alleges struck him, from entering upon that portion of the wharf whereon plaintiff was. working. However, most important of all is the testimony of Willie Gray. This witness, a friend of plaintiff, and his coem-ployee of River Service, Inc., had been subpoenaed as a plaintiff witness but was never served, and in order to have the benefit of his testimony, the judge issued an instanter summons and Gray was placed on the stand on behalf of the court. In the reasons for judgment the import of Willie Gray’s testimony is set forth and to our minds it holds-the maximum of probative force in view of the circumstances. Gray told the court that when one of the sugar hooks plaintiff was manipulating slipped from a bag of sugar, plaintiff lost his balance which caused him to involuntarily lean backwards, with the result he was struck by one of the projecting handles of defendant’s truck. Gray’s testimony is sufficient in itself to repel the assertion of plaintiff that he was negligently struck in the back by the handle of the truck. Over-all, we consider the evidence introduced by defendant to countervail plaintiff’s claims to be of the most positive character.
The trial judge saw and heard all of the witnesses when they testified, considered the documentary evidence, and his ultimate conclusion was that the facts did not justify a finding plaintiff was injured through any negligence- of the defendant or its employees, and, therefore, there was no validity in plaintiff’s demand. We are unable to find error. After a review of the record, our opinion is the judgment is fully supported by evidence which preponderates in favor of defendant.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.